UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SHANE T. WATKINS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | No. 07-cv-1062 |

## O P I N I O N  &  O R D E R

Before the Court is an Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. 22). Respondent answered the Amended Motion on November 19, 2008 (Doc. 26). For the reasons stated below, the Amended Motion is DENIED.

### BACKGROUND

On December 8, 2004, following a jury trial in the United States District Court for the Central District of Illinois, Petitioner, Shane T. Watkins, was convicted of possessing more than 50 grams of cocaine base (crack) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). Petitioner was sentenced to a mandatory term of life imprisonment. The judgment in Petitioner's underlying criminal case was entered on April 5, 2005.

Petitioner appealed his conviction to the United States Court of Appeals for the Seventh Circuit, raising a challenge to the district court's partial denial of his motion to suppress certain incriminating statements made to police. The Court of

Appeals affirmed the district court's judgment on March 31, 2006. Watkins did not petition the United States Supreme Court for a writ of certiorari.

On March 19, 2007, Petitioner Watkins filed the instant Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. 2). In the initial Motion to Vacate, Petitioner raised various claims of ineffective assistance of counsel, in addition to claims challenging the severity of his sentence. By Order of August 17, 2007, the Court directed Petitioner to submit a memorandum detailing the factual bases of his claims. By Order of December 21, 2007, on a motion by Petitioner, the Court directed the Federal Public Defender's Office to mail Petitioner's trial and sentencing transcripts to the Warden at McCreary Penitentiary so as to allow Petitioner access to the transcripts, subject to reasonable temporal restrictions. Subsequently, Petitioner submitted various motions, in which he objected to the temporal restriction placed on his access to the trial transcripts. These motions were denied.

On March 28, 2008, pursuant to extensions of time granted by the Court, Petitioner filed an Amended Motion pursuant to 28 U.S.C. § 2255 by depositing it with prison officials for mailing. In compliance with the Court's Orders of September 11 and November 13, 2008, Respondent answered the Amended Motion on November 19, 2008. On December 10, 2008, the Court granted Petitioner leave to file a reply to the Government's responsive pleading. Petitioner ultimately chose not to file a reply.

**LEGAL STANDARD**

In order for a court to grant relief under 28 U.S.C. § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

**ANALYSIS**

As a preliminary matter, the Court finds Petitioner's instant section 2255 motion to be timely. Because Petitioner did not petition the United States Supreme Court for certiorari on direct appeal, the judgment of his conviction became final ninety days after March 31, 2006 (the date on which the Court of Appeals affirmed the judgment). See Clay v. United States, 537 U.S. 522, 532 (2003); McMahan v. United States, 2009 WL 509869, at *2 (N.D. Ill. Mar. 2, 2009). Petitioner's initial section 2255 motion was filed on or about March 19, 2007, within the one-year limitation period set forth in 28 U.S.C. § 2255(f)(1). Petitioner later filed the Amended Motion pursuant to leave granted by the Court.[1]

---

[1] In his Amended Motion, Petitioner voluntarily withdrew certain grounds for relief that he had raised in his initial section 2255 motion. The claims that Petitioner has voluntarily withdrawn are not discussed here. The parties should note that the lettering of claims in this Opinion does not necessarily parallel the numbering of claims in either party's brief.

3

The Amended Motion raises the following grounds for relief under section 2255:

A. Petitioner's trial counsel was constitutionally ineffective for failing to convey to Petitioner an alleged plea offer by the Government.[2]

B. Pursuant to a recent change in federal law, the district court's use of Petitioner's prior convictions, to enhance his sentence, was improper.

C. Petitioner's trial counsel was constitutionally ineffective for failing to move for a hearing, under Franks v. Delaware, 438 U.S. 154 (1978), to challenge the existence of probable cause for the search of Petitioner's residence.

D. Petitioner's trial counsel was constitutionally ineffective for (i) failing to argue that Petitioner's possession of crack cocaine was for personal use and for (ii) failing to request a jury instruction consistent with this argument.

E. Petitioner's trial counsel was constitutionally ineffective for failing to conduct adequate pretrial investigation.

F. Petitioner's trial counsel was constitutionally ineffective for failing to object to a "constructive amendment to the indictment."

G. Petitioner's trial counsel was constitutionally ineffective for failing to object, on the basis of Brady v. Maryland, 373 U.S. 83 (1963), to the

---

[2] Petitioner identifies Karl Bryning, Assistant Federal Public Defender, as his attorney at trial, at sentencing, and on appeal.

prosecution's failure to produce evidence favorable to Petitioner, related to a confidential informant and Petitioner's significant other.

H.  Petitioner's appellate counsel was constitutionally ineffective for failing to pursue an objection to the prosecution's reference, under Federal Rule of Evidence 404(b) at trial, to Petitioner's prior convictions.

I.  Petitioner's trial counsel was constitutionally ineffective for (i) failing to challenge the under-representation of African Americans in the jury venire and for (ii) failing to object when the prosecution excluded African Americans from the jury.

J.  Petitioner's trial counsel was constitutionally ineffective for depriving Petitioner of his right to testify at trial.

K.  Petitioner's trial counsel was constitutionally ineffective for (i) failing to advise Petitioner of his ability to collaterally attack his prior convictions that were used to enhance his sentence and for (ii) generally failing to argue against the Government's use of Petitioner's prior convictions as a basis for a mandatory life sentence.

L.  Petitioner's appellate counsel was constitutionally ineffective for failing to brief and argue on appeal the meritorious issues preserved at trial.

M.  Recent changes in federal law warrant reconsideration of Petitioner's sentence.

"[A] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992),

overruled on other grounds, 26 F.3d 717 (7th Cir. 1994).  Accordingly, there are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the petitioner demonstrates cause for the procedural default and actual prejudice resulting from the failure to appeal.  Id.  Claims of ineffective assistance of counsel, however, are not subject to the usual procedural default rule; such claims may be brought in a section 2255 proceeding whether or not the petitioner could have raised the claims on direct appeal.  Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (citing Massaro v. United States, 538 U.S. 500, 504 (2003)).

## Ineffective Assistance of Counsel Claims

The Amended Motion is littered with allegations of ineffective assistance of counsel at trial and on appeal.  In Strickland v. Washington, the United States Supreme Court held that the Sixth Amendment affords a criminal defendant the right to an attorney whose performance meets an objective standard of reasonableness.  466 U.S. 668, 688 (1984).  There are two prongs that a petitioner must meet in order to make out a claim that his defense counsel was constitutionally defective: (1) counsel made errors so blatant and serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) but for counsel's unreasonably poor performance, there is a reasonable

6

probability that the result of criminal proceedings would have been different.  Id. at 687, 694.

The first prong of Strickland's test is to be applied under the strong presumption that counsel's performance was constitutionally adequate.  As the Supreme Court noted:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.
>
> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

Id. at 689-90 (quotations and citations omitted).  The Seventh Circuit Court of Appeals has held that, for substantive purposes, "'ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have

7

displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.'" Thompson v. Battaglia, 458 F.3d 614, 616 (7th Cir. 2006) (quoting Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005)).

Here, operating from hindsight, Petitioner challenges his defense counsel's strategy and performance at virtually every step. It is convenient for him to do so. Strickland, however, does not afford Petitioner a new trial on whether the decisions made by his defense attorney were optimal.

Petitioner has failed Strickland's test with respect to each of his allegations of ineffective assistance. To the extent Petitioner argues, in Claims H and L, that his counsel was ineffective for failing to raise certain issues on appeal, Petitioner has failed to adequately establish that the lines of argument he references had a reasonable probability of success on appeal.[3] As to Claims E, F, G, and K, Petitioner has failed to make any serious attempt to detail a factual basis sufficient to establish that the errors of counsel, alleged in these claims, caused counsel's performance to fall below a standard of objective reasonableness. Nor has Petitioner adequately explained how he was prejudiced by these alleged errors of counsel. See Fuller, 398 F.3d at 652.[4] Claims E, F, G, and K are based solely on

---

[3] Respondent has attached the affidavit of Petitioner's appellate counsel, in which counsel states that he considered and rejected the strategy of raising an objection to F.R.E. 404(b) evidence on appeal because any such objection had no reasonable probability of success. (Bryning Aff. ¶ 5).

[4] In Claim E, Petitioner generally asserts that his counsel failed to conduct an adequate pretrial investigation related to Petitioner's alleged personal use of crack cocaine. But Petitioner does not specifically identify any key pieces of evidence that

8

vague and conclusory allegations. They are not specific or complete enough to warrant further discussion or consideration. See Oliver v. United States, 961 F.2d 1339, 1342, 1343 n.5 (7th Cir. 1992). The Court will discuss, in greater detail below, the remaining instances of alleged ineffective assistance.

*Claim A -- Trial counsel's failure to convey to Petitioner
an alleged plea offer by the Government*

Petitioner alleges that, after he was found guilty, his trial attorney, Karl Bryning, told him that he should have accepted a plea agreement that the Government had offered. Petitioner alleges that he was surprised by this comment because no attorney had ever disclosed to him that a plea deal had been offered. In an affidavit attached to the Amended Motion, Petitioner swears to the truth of this encounter with Bryning.

In the Amended Motion, Petitioner further alleges, "Apparently, as [sic] some point in time, Watkins' former paid attorney (Joseph M. Gibson) was approached by the U.S. Attorney's Office about Watkins' possibly pleading guilty and made an offer of some sort." (Am. Mtn. at p. 3). Petitioner does not attempt to explain how he

---

counsel's further investigation into the matter would have produced. In Claim F, Petitioner challenges his counsel's failure to object to a "constructive amendment" to the indictment. It appears that Petitioner is contending that the jury instructions somehow constituted an amendment to the indictment. In the Amended Motion, Petitioner admits that he cannot allege the facts necessary to support this seemingly obscure claim. In any event, the Court is satisfied that Claim F is without merit, as Petitioner was convicted by jury of the single offense charged in the superseding indictment (Doc. 4). In Claim G, Petitioner alleges a Brady violation, but he does not specifically identify what favorable material the Government allegedly withheld. In Claim K, Petitioner alleges that his counsel was ineffective for failing to advise him of his ability to challenge his prior state convictions; yet Petitioner fails to allege any meritorious ground on which his prior convictions could have been challenged.

9

came to know of this alleged encounter between the prosecution and Mr. Gibson, nor does he swear to the accuracy of this allegation in his attached affidavit.

Putting aside Petitioner's vague, isolated allegation, there is nothing on the record suggesting that the Government ever offered a plea deal to any of Petitioner's attorneys. To the contrary, the affidavit of Petitioner's trial counsel, Karl Bryning, states, "There was no plea offer made to Mr. Watkins in this case." (Bryning Aff. ¶ 2). Petitioner's allegation regarding a plea-related discussion between his defense counsel and prosecutors is wholly unsupported and lacks the detail necessary to warrant an evidentiary hearing. See Oliver, 961 F.2d at 1343 n.5 ("No hearing is required in a section 2255 proceeding if . . . the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court.").

*Claim C -- Trial counsel's failure to move for a hearing to challenge the existence of probable cause for the search of Petitioner's residence*

Petitioner alleges that his trial counsel was constitutionally ineffective for failing to move for a hearing, under Franks v. Delaware, 438 U.S. 154 (1978), to challenge the existence of probable cause for the search of his residence. In Franks, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
>
> . . . .

10

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

438 U.S. at 155-56, 171.

In the instant case, Petitioner offers nothing more than a vague allegation that "false and/or invalid information was used to procure [a] search warrant for [his] residence which resulted in the seizure of contraband (i.e., controlled substances)." (Am. Mtn. at p. 4). In conclusory fashion, Petitioner alleges that "[h]ad counsel motioned the District Court for a Franks hearing, there is a reasonable probability that it would have been revealed that the Confidential Informant ("CI") that was supposedly used by agents was not reliable and that 'false statements' were 'intentionally, or with reckless disregard for the truth, …' [sic] were used to get [a] search warrant for Watkins' residence." (Am. Mtn. at p. 4). These allegations quite clearly lack the specificity necessary to warrant an evidentiary hearing under Franks. Petitioner has not adequately established (i) that his trial counsel's decision to forgo a Franks hearing was objectively unreasonable or (ii) that counsel's failure to move for a Franks hearing prejudiced Petitioner in any way. The claim is without merit.

*Claim D -- Trial counsel's failure to argue that Petitioner's possession of crack cocaine was for personal use and to request a jury instruction consistent with this argument*

Petitioner claims that his trial counsel was ineffective for failing to request a lesser-included offense instruction based on the argument that Petitioner's possession of crack cocaine was for personal use. First, Petitioner alleges that "[t]here existed evidence (not developed by counsel) that showed Watkins was consuming [an "8-ball" to a "quarter-bag"] of crack cocaine on a regular basis." (Am. Mtn. at p. 6). However, Petitioner makes no attempt to specifically identify this "undeveloped evidence." Second, Petitioner argues that his attorney did not adequately press the fact that "[t]he agents who conducted [the] search of [his] residence found no sign or evidence of drug trafficking (i.e., scales, baggies, large amounts of unexplained cash, guns, etc." Petitioner finds it significant that "[t]he only evidence to support [his] conviction . . . is the crack cocaine seized on [the] day of [the] search." (Am. Mtn. at p. 6) (emphasis omitted). Accordingly, Petitioner claims that his attorney should have more aggressively pursued the theory that the crack seized at his residence was for personal consumption and not for distribution.

The argument falls flat in light of key testimony at Petitioner's trial. At trial, the prosecution elicited the expert testimony of Officer Timothy Moore of the Peoria Police Department regarding amounts/weights of crack cocaine that are consistent with evidence of crack distribution. After acknowledging his awareness that over 54 grams of crack cocaine was found at Petitioner's residence, Officer Moore testified that, in the hundreds of crack-related investigations in which he had been

12

involved, he had never encountered a non-distributing user in possession of more than approximately 3 grams of crack. Officer Moore testified that, in his expert opinion, the amount of crack found at Petitioner's residence was consistent with distribution and not merely personal use. (Trial Tr. at pp. 293-95).

In addition, Officer Moore testified in regard to a distribution method called "selling out of the bag," whereby a distributor possesses a large open bag of crack and sells directly from the bag instead of packaging smaller amounts of the drug for sale. Officer Moore testified that experienced drug dealers who "sell out of the bag" do not need scales, as they can generally tell how much they are selling based on sight alone. Nor would a crack distributor operating in accord with this method necessarily need cooking equipment or cutting agents, according to Moore. (Trial Tr. at pp. 295-300). In sum, Officer Moore testified that, based on his experience, the evidence found at Petitioner's residence was consistent with evidence of crack distribution.

Petitioner's section 2255 motion omits any discussion of Officer Moore's testimony and its probable effect on the jury's verdict. Petitioner has offered virtually nothing to suggest a reasonable probability that, had his trial attorney more aggressively pursued a "personal consumption" theory, the jury would have reached a different decision. Therefore, Petitioner has not satisfied the prejudice prong of Strickland. By the same token, in light of Officer Moore's testimony, there was nothing objectively unreasonable about the decision of Petitioner's trial

13

attorney to limit the pursuit of a "personal consumption" defense to the cross-examination of Officer Moore. Accordingly, the claim is without merit.

*Claim I -- Trial counsel's failure to challenge the under-representation of African Americans in the jury venire and to object to the prosecution's exclusion of African Americans from the jury*

In this claim, Petitioner argues that his trial counsel was constitutionally ineffective for (i) failing to challenge the under-representation of African Americans in the jury venire and for (ii) failing to object when the prosecution excluded African Americans from the jury.

"While juries must be taken from a source that is representative of the community, the Constitution does not require this to ensure representative juries, but rather impartial juries." United States v. Ashley, 54 F.3d 311, 313 (7th Cir. 1995) (citation omitted). To establish a prima facie violation of the Sixth Amendment right to a venire drawn from a fair cross-section of the community, a criminal defendant must show the following: (1) that the group excluded is a distinctive part of the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process. Id.

Petitioner has made no showing of anything approaching a systematic exclusion of African Americans from the jury. And, as to his apparent attempt at a Batson claim, Petitioner has alleged nothing that would constitute a prima facie showing that prosecutors removed any potential juror as the result of purposeful

14

discrimination.  See Batson v. Kentucky, 476 U.S. 79, 96-97 (1986).  Accordingly, Petitioner has failed to establish that his trial attorney acted unreasonably in failing to raise these objections at trial.  Nor has Petitioner established that he was in any way prejudiced by his trial attorney's failure to raise these objections.  As a result, Petitioner's ineffectiveness claims regarding jury composition fail both prongs of Strickland.

*Claim J -- Trial counsel's alleged depriving Petitioner*
*of his right to testify at trial*

According to Petitioner, his trial counsel effectively deprived him of his right to testify in his own defense by allegedly misinforming him that the prosecution would be unable to reference his prior criminal convictions as long as he did not take the stand.  The Court finds this claim to be without merit because it fails Strickland's second prong.  At trial, the Court -- at the request of Petitioner's attorney -- thoroughly admonished Petitioner as to his right to testify in his own defense.  (Trial Tr. at pp. 321-22).  The Court's cautioning gave Petitioner an opportunity to clarify any issue connected with his decision not to take the stand.  During the Court's cautioning, Petitioner made no mention of what he now alleges in the instant section 2255 motion: that "[t]he only reason [he] did not testify is because counsel told him the prosecution could use his prior convictions [against him] . . . ."  (Am. Mtn. at p. 12).

Even if counsel did make an error in advising Petitioner in connection with the decision of whether to testify, Petitioner was not prejudiced as a result because he had a clear opportunity to test the reasoning behind his decision during the

15

Court's informational cautioning. It was Petitioner's choice not to utilize that opportunity. Further, Petitioner offers virtually nothing to convince the Court of a reasonable probability that, had he testified in his own defense, the result of trial would have been different. Accordingly, the claim is without merit.

## **Sentencing Claims**

*Claim B -- Allegation that the district court's use of Petitioner's prior convictions, to enhance his sentence, was improper*

Petitioner seems to argue that one of his prior drug offenses, used to enhance his sentence, was improperly classified at sentencing as a "felony drug offense" for purposes of 21 U.S.C. § 841(b)(1)(A). Specifically, he appears to argue that one of these prior drug offenses was a misdemeanor. He relies on Burgess v. United States, 128 S.Ct. 1572 (2008) to support this proposition. In Burgess, the Supreme Court held that the term "felony drug offense" is defined as "an offense involving specified drugs that is 'punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country.'" 128 S.Ct. at 1575. The gist of the Burgess decision is that a drug crime classified as a misdemeanor under state law may nonetheless constitute a "felony drug offense" under § 841(b)(1)(A). If Petitioner is attempting to argue to the contrary (and it appears that he is), his argument is without merit.

16

*Claim M -- Allegation that recent changes in federal law warrant reconsideration of Petitioner's sentence*

In his final claim, Petitioner requests that this Court recalculate his sentence by treating the United State Sentencing Guidelines (USSG) as purely advisory.[5] He cites to <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007) to support this proposition. In <u>Kimbrough</u>, the Supreme Court considered whether the sentencing disparity, included in the USSG, between offenses involving crack cocaine as opposed to powder cocaine was mandatory or merely advisory. <u>Kimbrough</u> was not aimed at § 841(b)(1)(A)'s imposition of mandatory minimum sentences. 128 S.Ct. at 573 ("[S]entencing courts remain bound by the mandatory minimum sentences prescribed in the 1986 Act . . . ."); <u>see</u> <u>United States v. Liddell</u>, 543 F.3d 877, 883 (7th Cir. 2008). Petitioner was sentenced to a mandatory term of life imprisonment pursuant to § 841(b)(1)(A), and that is the end of the matter.

## CONCLUSION

For the reasons stated above, the Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is DENIED.

CASE TERMINATED.

ENTERED this <u>2nd</u> day of April, 2009.

s/ Joe B. McDade
JOE BILLY MCDADE
United States District Judge

---

[5] In December 2008, Petitioner Watkins filed a motion, in his underlying criminal case, requesting a reduction of sentence on similar grounds. The Court denied that motion by Order of January 27, 2009, holding that Watkins' sentence was mandated by statute. Watkins filed a notice of appeal as to that Order on February 13, 2009, and the appeal is pending.